UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ST. PAUL FIRE & MARINE INSURANCE
COMPANY and NORTHERN ASSURANCE
COMPANY OF AMERICA

                Plaintiffs,

      v.                                                                    Case No. 12-C-0885

TGMD, INC., BAY SHIPBUILDING CO.,
FINCANTIERI MARINE GROUP LLC and
FINCANTIERI MARINE GROUP LLC d/b/a
BAY SHIPBUILDING CO.

                Defendant.

## DECISION AND ORDER GRANTING IN PART AND
## DENYING IN PART MOTION TO DISMISS

      Plaintiffs St. Paul Fire & Marine Insurance Company and Northern Assurance Company of America paid for repairs to the passenger and vehicle ferry owned by their insured Washington Island Ferry Line, Inc., and brought this action against companies that designed, built, and repaired the vessel to recover the amounts paid. Plaintiffs allege that the case arises under the Court's admiralty jurisdiction and have asserted claims for breach of contract, negligence and breach of warranty of workmanlike performance. Defendant Bay Shipbuilding Co., a division of Fincantieri Marine Group, LLC (collectively, FMG), the company that built the vessel and later made repairs, has moved to dismiss plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). FMG first argues that plaintiffs fail to establish that the Court has subject matter jurisdiction over plaintiffs' claims because a breach of a

shipbuilding contract does not give rise to admiralty jurisdiction. Second, FMG contends that even if subject matter jurisdiction exists, plaintiffs have failed to state a claim for breach of contract and breach of warranty because the plain language of the contract and the applicable statute of limitations bar the plaintiffs' cause of action. Third, FMG argues plaintiffs' negligence claim is barred by the economic loss doctrine.

## BACKGROUND

The facts of this case concern the design, construction, and repair of the M.V. Arni J. Richter, a passenger and vehicle ferry. (Compl. ¶¶ 4-7.) On May 1, 2002, Washington Island Ferry Line, Inc. and FMG[1] entered into a passenger vessel construction contract (the Shipbuilding Agreement) whereby FMG would perform all work necessary to construct and deliver the vessel. (Decl. of Nancy Anschutz, Ex. A at 1-2, Passenger Vessel Construction Contract, Art. XI (a), ECF No. 17-1.) Defendant TGMD, Inc. designed the vessel for Washington Island. (Compl. ¶¶ 5-6, Decl. of Nancy Anschutz, Ex. A at 2, Passenger Vessel Construction Contract, Art. XI (a), ECF No. 17-1.) FMG then constructed the vessel. (Compl. ¶ 7.) Plaintiff alleges that defendants improperly designed, manufactured, built, or launched the vessel, necessitating drydocking and repairs to the vessel. (Compl. ¶ 9.) Thereafter, FMG and

---

[1]The shipbuilding contract states it is between Washington Island and Bay Shipbuilding, Co. Defendants assert that Bay Shipbuilding Co. is now an operating division of Fincantieri Marine Group, LLC, and is not separately incorporated. (Def. Br. at 1, n.1.) Because the parties and the complaint refer to FMG collectively, and not to Bay Shipbuilding separately, I will also refer to FMG collectively for purposes of deciding this motion.

2

Washington Island entered into at least one subsequent agreement to perform repairs on the vessel. (Compl. ¶ 10.) Plaintiff alleges that these repairs were also improperly executed, which necessitated additional repairs. (Compl. ¶ 11.) Plaintiffs St. Paul Fire & Marine Insurance Company and Northern Assurance Company of America insured Washington Island. (Compl. ¶¶ 2-4.) Plaintiffs paid for the repairs under their policy and are subrogated to Washington Island's rights against the defendants. Plaintiffs are seeking damages for the cost of the repairs. (Compl. ¶¶ 12, 19, 27.)

In their complaint, plaintiffs have asserted three separate claims, as noted above, but plaintiffs also appear to distinguish between the original Shipbuilding Agreement and the subsequent agreement to repair the vessel. Referring to the defendants collectively, plaintiffs allege that with regard to the Shipbuilding Agreement, defendants: (1) breached the Shipbuilding Agreement by improperly designing, manufacturing, building, or launching the vessel (Compl. ¶ 9); (2) negligently designed, manufactured, built, or launched the vessel (Compl. ¶¶ 14-16); and (3) breached the implied warranty of workmanlike performance by negligently designing, manufacturing, building, or launching the vessel (Compl. ¶¶ 21-23). In addition, plaintiffs allege that with regard to the subsequent repairs on the vessel, defendants: (1) breached their agreement(s) by improperly repairing the vessel (Compl. ¶¶ 10-11); (2) negligently performed repairs on the vessel (Compl. ¶¶ 17-18); and (3) breached the implied warranty of workmanlike performance by negligently repairing the vessel (Compl. ¶¶ 24-25.)

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 558 (2007).

3

To state a claim, a complaint must contain sufficient factual matter "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[T]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive dismissal, a plaintiff "must plead some facts that suggest a right to relief that is beyond the 'speculative level.'" *Atkins v. City of Chicago,* 631 F.3d 823, 832 (7th Cir. 2011) (quoting *In re marchFIRST Inc.,* 589 F.3d 901, 905 (7th Cir. 2009)). In considering a motion to dismiss, the court construes the allegations in the complaint in the light most favorable to the plaintiff, accepts all well-pleaded facts as true, and draws all inferences in favor of the non-moving party. *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011).

In deciding a motion to dismiss, district courts have discretion to consider certain documents outside the pleadings without converting the motion under Rule 12(b)(6) to a motion for summary judgment under Rule 56. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). In particular, documents submitted with a motion to dismiss may be considered part of the pleadings if they are "referred to in the plaintiff's complaint and are central to his claim." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (internal quotation marks omitted); *see also Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). This exception, though a narrow one, prevents parties from surviving a motion to dismiss by artful pleading or by simply failing to attach relevant documents. *188 LLC*, 300 F.3d at 735. The usual example of the use of this exception is a contract in a suit for breach of that contract. *See Tierney*, 304 F.3d at 738.

4

## ANALYSIS

**A.     Subject Matter Jurisdiction**

Plaintiffs have invoked the court's admiralty jurisdiction under 28 U.S.C. § 1333(1). *See* Federal Rule of Civil Procedure 9(h). FMG firsts argues the case should be dismissed pursuant to Rule 12(b)(1) because plaintiffs have failed to establish a basis for admiralty jurisdiction in their complaint. Generally, "maritime" contracts fall within the federal courts' admiralty jurisdiction. *Exxon Corp. v. Central Gulf Lines*, 500 U.S. 603 (1991). Whether a contract is a maritime one "'depends upon . . . the nature and character of the contract,' and the true criterion is whether it has 'reference to maritime service or maritime transactions.'" *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 24 (2004) (quoting *N. Pacific S.S. Co. v. Hall Brothers Marine Railway & Shipbuilding Co.,* 249 U.S. 119, 125 (1919)). In general, contracts to repair or insure a ship are maritime, but contracts to build a ship are not. *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961). A contract to construct a ship is not held to be within admiralty jurisdiction because it is "a contract made on land, to be performed on land." *People's Ferry Co. v. Beers,* 61 U.S. 393, 401 (1857); *see also J.A.R., Inc. v. M/V Lady Lucille*, 963 F.2d 96, (5th Cir. 1992) (explaining that a shipbuilding contract is only preliminary to navigation). FMG contends the breach of the Shipbuilding Agreement is the core of plaintiffs' complaint. Because federal courts do not have admiralty jurisdiction over contracts to build ships, FMG argues that plaintiffs' complaint should be dismissed.

But while a contract to build a ship is not maritime, a contract to repair a ship is. *Kossick*, 365 U.S. at 735; *see also New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 28 (2d Cir. 1997) ("A claim arising out of a contract to repair a ship falls squarely within a federal court's admiralty jurisdiction under 28 U.S.C. § 1333.") (citing *New Bedford Dry Dock Co. v. Purdy*, 258 U.S.

5

96 (1922)). A contract providing for repairs is maritime because the "repair and/or service component of the contract relates to ships in their use as ships." *Medema v. Gombo's Marina Corp.*, 97 F.R.D. 14, 15 (N.D. Ill. 1982). Thus, plaintiffs argue that the court has admiralty jurisdiction over its breach of contract claims that relate to the repairs. The remaining claims, plaintiffs contend, fall within the court's supplemental jurisdiction. (Pl. Opp'n Br. at 3 (citing cases)).

FMG notes in reply that plaintiffs' complaint alleges that the repairs FMG performed were necessitated by the improper and negligent design and construction of the vessel. (Reply 3, ECF No. 20.) Because the repairs are alleged to have been due to "the faulty original construction," they too arise from the Shipbuilding Agreement which is outside the admiralty jurisdiction of the court. (*Id.*) "If the sole claims that survive FMG's Motion to Dismiss arise from the Shipbuilding Agreement," FMG argues, "this Court lacks subject matter jurisdiction." (*Id.*)

The complaint alleges, however, that "the subsequent repairs were performed by the Defendants pursuant to a contract or other agreement(s)." (Compl. ¶ 24.) And defendants are alleged to have breached "said repair contracts or agreement(s) . . . thereby necessitating yet further and additional repairs." (*Id.* ¶ 25.) Thus, even if the repairs were necessitated by the faulty performance of the original contract, the claim that FMG entered into and breached separate repair contracts would still bring the case within the court's maritime jurisdiction. And since the non-maritime claims are so related as to form part of the same case or controversy, it would appear that they fall within the court's supplemental jurisdiction. *See* 28 U.S.C. § 1337(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same

6

case or controversy."). FMG's motion is therefore denied to the extent it seeks dismissal for lack of subject matter jurisdiction.

**B.     Breach of Contract and Breach of Warranty Claim**

FMG also argues, assuming federal jurisdiction exists, that plaintiffs' breach of contract and warranty claims should be dismissed because they are time-barred and prohibited by the plain language of the Shipbuilding Agreement. Because they stand in the shoes of Washington Island as subrogated parties, plaintiffs' right to recover against FMG is subject to the same limitations and defenses that FMG has against Washington Island. Washington Island's claims against FMG arising out of the original construction of the vessel are subject to the limitations set forth in the Shipbuilding Agreement. That agreement contains warranty provisions that significantly limits FMG's liability for faulty construction.

Under the Shipbuilding Agreement, the contractor warranted "that all work performed and all materials incorporated into the Vessel by Contractor shall be in accordance with the Specifications, will be free of defects, and of good commercial shipbuilding practice." (Decl. of Nancy Anschutz, Ex. A at 7, Passenger Vessel Construction Contract, Art. XI (a), ECF No. 17-1.) The contractor was required to repair or otherwise remedy any defect in workmanship or materials that was discovered within the twelve months after acceptance of the vessel by the owner, Washington Island. The contractor had no liability, however, for defects that were discovered after the twelve-month warranty period: "Upon expiration of the twelve (12) month warranty period, Contractor shall be discharged from all liability for defective workmanship or defective material unless the same is discovered prior thereto and a claim is made to Contractor within the warranty period." (*Id.*, Art. XI (c).)

7

Based on the warranty provision of the Shipbuilding Agreement, FMG argues that plaintiffs' claims for breach of the Shipbuilding Agreement are time-barred. (Def. Br. at 4.) In the alternative, FMG contends the claims are untimely under Wisconsin law. In Wisconsin, the statute of limitations for bringing an action pursuant to a breach of contract is six years after the cause of action accrued. Wis. Stat. § 893.43. A cause of action accrues at the time of the breach and the discovery rule does not apply. *CLL Assoc. v. Arrowhead Pacific*, 174 Wis. 2d 604, 497 N.W.2d 115 (1993).

"The dominant view in contract law is that contractual limitations periods shorter than the statute of limitations are permissible, provided they are reasonable." *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 874 (7th Cir. 1997). This rule is "consistent with the principle of party autonomy that underlies the law of contracts." *Id.* In Wisconsin, courts have long acknowledged that "[p]ublic policy . . . permits parties to bind themselves by contract to a shorter period of limitation than that provided for by statute." *State Dept. of Pub. Welfare v. La Mere*, 19 Wis. 2d 412, 419, 120 N.W.2d 695, 699 (1963) (citing *Lundberg v. Interstate Business Men's Accident Ass'n*, 162 Wis. 474, 481, 156 N.W. 482, 484 (1916)); *Keiting v. Skauge*, 198 Wis. 2d 894, 543 N.W.2d 565, 567 (Wis. Ct. App. 1995). Commercial parties are generally held to their promises, "ensuring that each party receives the benefit of their bargain." *Daanen & Jaansen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 404, 573 N.W.2d 842, 846 (1998); *State Farm Mut. Auto Ins. Co. v. Ford Motor Co.*, 225 Wis. 2d 305, 316-17, 592 N.W.2d 201, 206 (Wis. 1999) ( "Contract law . . . is based on obligations imposed by bargain, and it allows parties to protect themselves through bargaining."). Because agreements struck between commercial parties generally do not involve large disparities in bargaining power, courts have "no reason

8

to intrude into the parties' allocation of the risk." *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 872-73 (1986).

Here, the commercial contract language lays out in clear and unambiguous terms that FMG would be discharged from all liability for defective workmanship, materials, or repairs one year after acceptance of the vessel. According to the signed Certificate of Delivery and Acceptance, the vessel was delivered in accordance with the Shipbuilding Agreement and accepted by Washington Island on May 22, 2003. (Anshutz Decl. ¶ 2, Ex. A at 19, ECF No. 17-1.) Therefore, pursuant to the written agreement of the parties, Washington Island's twelve-month warranty period expired after May 22, 2004. Plaintiffs' complaint alleges that defendants "improperly designed, manufactured, built and/or launched [the vessel], thereby necessitating subsequent drydocking and/or repairs." (Compl. ¶ 9.) These breach of contract claims arising out of the improper design and manufacture of the vessel are barred by the plain language of the Shipbuilding Agreement. Likewise, plaintiffs claims that defendants breached the warranty of workmanlike performance implied in the Shipbuilding Agreement are also barred.[2]

But while claims related to a breach of the Shipbuilding Agreement are barred, plaintiffs' claims related to a breach of a subsequent agreement to repair the vessel are not. Plaintiffs allege that "[s]aid subsequent repairs" were performed by FMG "pursuant to a contract or other agreement(s)" that was breached when FMG again improperly repaired the vessel, leading to further repairs. (Compl. ¶ 10-11.)

---

[2]Plaintiffs argue that claims for defects in FMG's performance of the original Shipbuilding Agreement may not be barred by the warranty provision since Washington Island may have given FMG notice of the defects prior to May 22, 2004. But even if Washington Island gave such notice, the claims would still be barred. Instead of being barred by the warranty, they would be barred by the six-year statute of limitations. Either way, plaintiff's claims arising out of the original Shipbuilding Agreement are barred.

9

Viewing these allegations in a light most favorable to plaintiffs, it is reasonable to believe that FMG performed repairs according to an entirely new agreement between the parties, and FMG breached this new repair agreement within the six year limitations period provided under Wisconsin law. Plaintiffs need not plead facts in their complaint demonstrating the timeliness of their suit. *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993). "Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations. But dismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674-75 (7th Cir. 2009). Here, plaintiffs' complaint establishes its own tardiness as to a breach of the Shipbuilding Agreement and any implied warranty of workmanlike performance associated with that contract. However, insofar as plaintiffs have also alleged a breach of a later repair agreement, the complaint states a plausible claim upon which relief may be granted. As such, the breach of contract and warranty claims as they relate to a subsequent repair agreement cannot be dismissed at this stage.

### C. Negligence Claim

FMG also argues that the economic loss doctrine bars plaintiffs' tort claims. Under general maritime law, the economic loss doctrine prohibits the use of tort remedies to recover for purely economic losses that arise out of commercial transactions between contracting parties. *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 872-73 (1986); *Rardin v. T&D Mach. Handling, Inc.*, 890 F.2d 24, 28 (7th Cir. 1989). The doctrine rests on maintaining the necessary distinction between tort recovery for physical injuries and warranty recovery for economic loss so as to "maintain a realistic

10

limitation on damages." *East River*, 476 U.S. at 871. Commercial entities can efficiently allocate risks by negotiating a contract that will limit liability and set the terms of compensation for product failure. *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 879 (1997). Where such a commercial contract exists, courts have "no reason to intrude into the parties' allocation of the risk." *East River*, 461 U.S. at 873. "The insight behind the doctrine is that commercial disputes ought to be resolved according to the principles of commercial law rather than according to tort principles designed for accidents that cause personal injury or property damage. A disputant should not be permitted to opt out of commercial law by refusing to avail himself of the opportunities which that law gives him." *Miller v. U.S. Steel Corp.*, 902 F.2d 573, 575 (7th Cir. 1990).

Therefore, plaintiffs' negligence cause of action must be dismissed. Plaintiffs' negligence claims arise out of the Shipbuilding Agreement and the additional agreement to repair the vessel. Plaintiffs only claim injury to the vessel itself–that defendants' negligent work designing, building, and repairing the vessel resulted in damage to the vessel and costs incurred in having to subsequently repair it. As a result, plaintiffs allege that Washington Island made a claim for approximately $206,687 under its insurance policy to recoup its losses, and it is this sum that plaintiffs seek in the instant lawsuit. The parties involved are sophisticated commercial actors capable of anticipating and allocating the risks of economic losses. *See Employers Ins.*, 866 F.2d at 765. Indeed, the parties did anticipate such losses and contractually agreed to limit liability in the Shipbuilding Agreement. Plaintiffs' negligence claim cannot lie in admiralty where the only injury claimed is economic loss. *East River*, 476 U.S. at 876.

Plaintiff responds that its negligence claims against FMG are viable because the economic loss doctrine does not apply to bar recovery in tort for the negligent performance of services. Plaintiffs'

11

arguments are all based on the application of state law to its maritime claims. The Wisconsin Supreme Court has drawn a bright line rule making the economic loss doctrine inapplicable to claims for the negligent provision of services. *Ins. Co. of N. Am. v. Cease Elec. Inc.*, 2004 WI 139, ¶ 52, 276 Wis. 2d 361, 369, 688 N.W.2d 462, 466. Among the reasons the Wisconsin Supreme Court gave for drawing such a line was that unlike contracts for goods, which enjoy the benefit of well-developed law under the Uniform Commercial Code, contract law is not as well suited to deal with contracts for services. *Id.* However, in applying substantive maritime law, at least one other Circuit has declined to recognize an exception to the economic loss rule when the underlying contract is for the provision of professional services. *Employers Ins. of Wausau v. Suwannee River Spa Lines, Inc.*, 866 F.2d 752, 763 (5th Cir. 1989). The court explained:

> We conclude that *East River*'s broad concern for preserving the integrity of contract law in commercial settings applies equally to a case such as this where the professional services are an integral part of the manufacture or construction of a product and where the only injury alleged is to the product itself. As in *East River*, the damage alleged here is purely economic. Thus, the public policy concerns which underpin the imposition of a duty in tort–the need to provide consumers with greater protection from personal injury and property damage than is afforded by warranty or contract–are not implicated.

*Id.* Whether providing goods or services, the commercial parties here were fully capable of contractually bargaining to protect themselves. The monetary loss Washington Island and plaintiff subrogors suffered here as a result of the defendants' alleged negligence "is essentially the failure of the purchaser to receive the benefit of its bargain–traditionally the core concern of contract law." *Employers Ins.*, 866 F.2d at 765 (quoting *East River*, 476 U.S. at 870).

12

## CONCLUSION

For the reasons indicated above, plaintiffs' breach of contract claims relating to a breach of the May 1, 2002 Shipbuilding Agreement must be dismissed. But, insofar as plaintiff has alleged breach of contract and breach of warranty claims relating to a subsequent repair agreement, FMG's motion to dismiss is **DENIED**. However, plaintiffs have failed to state a negligence claim that entitles them to relief because it is barred by the economic loss doctrine. Accordingly, FMG's motion to dismiss plaintiffs' negligence claim is **GRANTED**.

Dated this 12th day of December, 2012.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Judge